**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| LASHARNE WALKER, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. CJC-25-2860 |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY, | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

Plaintiff/Claimant Lasharne Walker petitions this Court to review the Commissioner of the Social Security Administration's (the "Commissioner") final decision involving her claims for supplemental security income ("SSI"). ECF No. 13 at 3.[1] The Court has considered the record and the parties' briefs. ECF Nos. 7, 13, 15, 16. No hearing is necessary. Loc. R. 105.6 (D. Md. 2025). For the reasons that follow, the Court reverses and remands this case for further proceedings.

## PROCEDURAL HISTORY

On October 5, 2021, Walker applied for SSI under Title XVI of the Social Security Act. R. 55. Walker's claim was denied initially and on reconsideration. R. 77, 83. On Walker's request, an Administrative Law Judge ("ALJ") held a hearing to review her claim. R. 32–54, 86. Following the hearing, the ALJ issued a decision in which the ALJ found that Walker was not disabled. R. 14–31. Walker requested that the Social Security Appeals Council review the ALJ's

[1] Citations to the parties' filings refer to the page number provided in the CM/ECF filing header, not the PDF pagination.

decision. R. 153–54. On July 8, 2025, the Appeals Council denied her request for review, rendering the ALJ's decision the final, reviewable decision of the Social Security Administration. R. 1–3. Walker then timely petitioned for judicial review in this Court on August 29, 2025. ECF No. 1.

**THE ALJ'S DECISION**

A claimant is legally disabled under the Social Security Act if they are unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). The ALJ must conduct a five-step sequential evaluation to determine if a claimant is disabled. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "For the first four steps, the burden lies with the claimant; at step five, it shifts to the Commissioner." *Thomas v. Berryhill*, 916 F.3d 307, 310 (4th Cir. 2019), *as amended* (Feb. 22, 2019). The ALJ reviews whether the claimant "(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock*, 667 F.3d at 472. Prior to steps four and five, the ALJ must determine a claimant's Residual Functional Capacity ("RFC"), which is the most work a claimant can do despite their physical and mental limitations. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 254 (4th Cir. 2017).

The ALJ here conducted the sequential evaluation as follows. At step one, the ALJ found that Walker had not "engaged in substantial gainful activity since October 5, 2021, the application date." R. 19. At step two, the ALJ determined that Walker had the following severe

impairments: "dysthymic disorder, lumbago, and obesity." R. 19.[2] At step three, the ALJ found that Walker did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R. 20. The ALJ then found that Walker had the RFC to

> perform medium work as defined in 20 CFR 416.967(c) except [Walker] can lift and carry 50 pounds occasionally and 25 pounds frequently. She can sit for 6 hours in an 8-hour workday, stand for 6 hours, and walk for 6 hours. She can push and pull as much as she can lift and carry. She can operate foot controls with the right foot frequently. She can climb ramps and stairs occasionally. She can climb ladders, ropes, or scaffolds occasionally. She can stoop and crouch frequently. She can operate a motor vehicle frequently. She is able to perform simple, routine tasks. She is able to perform simple, work-related decisions. She is able to interact with supervisors, co-workers, and the public occasionally. She is able to tolerate occasional changes in a routine work setting.

R. 22. At step four, the ALJ found that Walker did not have any past relevant work. R. 27. At step five, the ALJ determined that, based on Walker's "age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that [Walker] can perform." R. 27. As a result, the ALJ concluded that Walker was not disabled. R. 28.

## STANDARD OF REVIEW

The Court will affirm the ALJ's decision if the ALJ's factual findings are "supported by substantial evidence and were reached through application of the correct legal standard." *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023) (citation omitted); 42 U.S.C. § 405(g). An ALJ's decision satisfies the substantial evidence standard if it contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). In conducting this review, the Court determines "not just 'whether the ALJ examined all relevant evidence' but also whether

[2] The ALJ also found that Walker had the non-severe impairments of hyperlipidemia and right heel fracture. R. 19.

the ALJ 'offered a sufficient rationale in crediting certain evidence and discrediting other evidence.'" *Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 605 (4th Cir. 2025) (citation omitted).

**DISCUSSION**

Walker argues that the ALJ committed three errors: that the ALJ erroneously evaluated several medical opinions; that the ALJ inadequately assessed the RFC; and that the ALJ failed to adequately develop the record. ECF No. 13 at 14, 20, 24. Because the Court agrees that the ALJ failed to evaluate some of the medical opinions in the record, the Court need not address Walker's other arguments.

An ALJ must assess the persuasiveness of medical opinions given by medical sources in the record. 20 C.F.R. § 416.920c(a); *Lauren P. v. Dudek*, Civil Action No. SAG-24-0480, 2025 WL 754522, at *3 (D. Md. Mar. 10, 2025). The "most important factors" the ALJ considers when evaluating a medical opinion are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Indeed, the ALJ is "required by rule" to explain how they considered the supportability and consistency factors in their opinion. *Drumgold*, 144 F.4th at 605; 20 C.F.R. § 416.920c(b)(2).[3] "Supportability is the degree to which a provider supports their opinion with relevant, objective medical evidence and explanation, and consistency is the degree to which a provider's opinion is consistent with the evidence of other medical and non-medical sources in the record." *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023). In other words, when evaluating supportability, an ALJ must look within the opinion to determine its persuasiveness; conversely, when evaluating consistency, an ALJ must look outward by determining whether the

[3] The ALJ also may, but is not required to, explain how they considered the other factors of relationship with the claimant, the specialization of the medical source, and miscellaneous factors. 20 C.F.R. § 416.920c(b)(2).

opinion aligns with other evidence in the record. *See Joyce C. v. Bisignano*, Civil Action No. DRM-25-0076, 2026 WL 458564, at *3 (D. Md. Feb. 18, 2026). The ALJ must support their evaluation by citing to "specific objective evidence" in the record. *Shelley C.*, 61 F.4th at 358.

Walker argues that the ALJ erred in evaluating the medical opinions of Anuja Kurichh, M.D.; Clarence Johnson, CRNP; and the state agency medical consultants C. Pio Roda, M.D., and William Rutherford Jr., M.D. ECF No. 13 at 14, 20. The Court addresses each in turn.

## I. The ALJ Erred in Evaluating Dr. Kurichh's Opinion.

The ALJ found Dr. Kurichh's opinion unpersuasive in part because it was unsupported. Specifically, the ALJ found that "the exertional limitations indicated, including but not limited to the limitation of lifting and carrying no more than 5 pounds, are not supported with any explanation …. The claimant's right ankle was swollen at the consultative examination, she had multiple trigger points, and some limitations in range of motion; though her effort at the [consultative examination] was only noted as fair." R. 26. Thus, the ALJ found Dr. Kurichh's opinion unsupported because it lacked explanation and because Walker's effort at the examination was only fair.

The ALJ erred in evaluating the supportability of Dr. Kurichh's opinion for three reasons. First, while Dr. Kurichh's explanation for her conclusions is brief, the ALJ failed to evaluate the medical evidence on which she based her opinion. Indeed, Dr. Kurichh indicated that her conclusions were supported by the range of motion, neurological, and joint examinations contained within the opinion. *See* R. 356. Notably, the ALJ failed to analyze or even raise Walker's neurological examination, in which Dr. Kurichh opined that Walker's motor strength was 4 to 5/5 in the right and left upper and lower extremities due to pain. R. 355. The ALJ's omission of this evidence, evidence that appears to challenge the ALJ's RFC, was error.

Second, the ALJ failed to elaborate on how Walker's fair effort discounted Dr. Kurichh's range of motion finding. An ALJ inadequately evaluates the supportability of a medical opinion that describes a claimant's effort during an exam if the ALJ does not consider whether the medical expert accounted for such effort in drawing their conclusions. *See Theresa S. v. Bisignano*, Civil Action No. DRM-25-0094, 2025 WL 3628620, at *3 (D. Md. Dec. 15, 2025). Here, the ALJ suggested that because Dr. Kurichh opined that Walker only gave a fair effort in performing the range of motion exam, the results of this exam should be given less weight. *See* R. 26. "But the ALJ did not suggest that Dr. [Kurichh] failed to incorporate these considerations when interpreting the [range of motion] score[s] as a component of his evaluation, nor did [the ALJ] point to any evidence of such a failure." *Teresa S.*, 2025 WL 3628620, at *3. This inadequate explanation was erroneous.

Third, even if the ALJ had properly discounted Dr. Kurichh's opinion by pointing out Walker's fair effort, such effort would only have discounted Walker's range of motion examination. Walker's fair effort has no bearing on the objective evidence of Walker's swollen right ankle, multiple trigger points, and limited strength in her upper and lower extremities due to pain. The ALJ erred by failing to address the supportability of these findings as distinct from the effort Walker gave in her range of motion examination.

For these reasons, the ALJ erred in evaluating the supportability of Dr. Kurichh's medical opinion.

## II. The ALJ Erred in Evaluating CNRP Johnson's Opinion.

CNRP Johnson's opinion consists of a two-page check-box form in which CNRP Johnson checked that Walker had moderate and marked limitations in understanding and memory, minimal, marked, and extreme limitations in concentration and persistence, minimal,

marked, and extreme limitations in social interaction, that Walker would be off task twenty percent of the workday, and that she would be absent from work more than four days a month. R. 481–82.

Walker argues that the ALJ erred in evaluating the supportability and consistency of CNRP Johnson's opinion. ECF No. 13 at 18–20. The Court addresses each component of the ALJ's analysis below.

**A. The ALJ did not err in evaluating the supportability of CNRP Johnson's opinion.**

In evaluating the supportability of CNRP Johnson's opinion, the ALJ found that "[t]here is absolutely no support for the check-marked assessment … as the provider fails to provide any explanation for the limitations set forth." R. 25. The question is whether this evaluation was erroneous.

The Court finds that the ALJ did not err in evaluating whether CNRP Johnson's opinion was supported. It is well established that check boxes without further explanation offer marginal evidentiary value. *See, e.g.*, *Shayna R. v. Kijakazi*, Civil Action No. BAH-21-1803, 2022 WL 1239876, at *3 (D. Md. Apr. 27, 2022) (collecting cases for the proposition that check-box forms "fail to provide an explanation for the conclusions they contain and often fail to account for changes in limitations based on other factors"); *Kirby v. Kijakazi*, No. 3:21-CV-235-MOC, 2022 WL 893102, at *6 (W.D.N.C. Mar. 25, 2022) ("Pre-printed check-the-box forms are notoriously deficient."). Here, CNRP Johnson did not explain in the check-box form how she determined that Walker suffered the limitations (in particular, the marked and extreme limitations) that she selected. Accordingly, because an inadequate explanation is a valid basis from which to discount the supportability of a check-box medical opinion, the ALJ did not err in pointing out CNRP Johnson's missing explanation. *See Shayna R.*, 2022 WL 1239876, at *3.

Walker contends that CNRP Johnson's routine medical exams of Walker, separate from CNRP Johnson's check-box opinion, are sufficient to support CNRP Johnson's opinion and that the ALJ erred by failing to discuss these records. ECF No. 13 at 18–19. The Court disagrees for two reasons. First, the absence of explanation provided by the check-box form is a valid basis, on its own, to discount the persuasiveness of the medical opinion. Second, the ALJ did, in fact, assess CNRP Johnson's medical exams when evaluating her check-box opinion. *See* R. 25 (citing Johnson's exam notes at R. 378). Thus, in discussing these findings, the ALJ clearly considered the notes of CNRP Johnson and found that they did not support the marked and extreme limitations opined on in the check-box opinion.[4] Based on this assessment and the absence of any explanation tying CNRP Johnson's medical notes to the check-box opinion, the ALJ did not err in evaluating the supportability of CNRP Johnson's opinion.

**B. The ALJ erred in evaluating the consistency of CNRP Johnson's opinion.**

Walker argues that the ALJ erred in evaluating the consistency of CNRP Johnson's opinion because (1) the ALJ found that Walker's mental health treatment was conservative without explanation[5] and (2) the ALJ failed to explain contradictory evidence in the record regarding Walker's mental abilities. ECF No. 13 at 19; ECF No. 16 at 3–5. The Court agrees.

---

[4] Courts have struggled to determine "whether a medical opinion provider's own treatment records impact the supportability factor, the consistency factor, or both." *See Tracy O. v. Bisignano*, No. 3:24-CV-304 (REP), 2025 WL 2459093, at *9 (E.D. Va. Aug. 8, 2025) (citation omitted) (collecting cases on the issue), *R. & R. adopted*, 2025 WL 2463639 (E.D. Va. Aug. 26, 2025). The Court need not resolve this issue here, however. Regardless of whether this issue should be considered under the supportability or consistency analysis, the ALJ did not err in evaluating CNRP Johnson's exam notes and their coherence with her check-box opinion.

[5] This argument was initially raised in Walker's reply brief. ECF No. 16 at 3–4. Thus, the question is whether it was waived. "Generally, 'new arguments cannot be raised in a reply brief' before the district court." *De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 531 (4th Cir. 2022) (citation omitted). However, "a district court may consider an argument raised for the first time on reply under appropriate circumstances." *Id.* For example, a party validly raises a new argument asserted

First, the ALJ found that CNRP Johnson's opinions were inconsistent with Walker's "conservative mental health treatment of therapy and medication management," R. 25, but this finding is not supported by substantial evidence. The Fourth Circuit has agreed with district courts that have concluded that "in cases where claimants consume antidepressant, anticonvulsant, and/or antipsychotic drugs, consistently attend visits with mental health profession[als], and endure constant medication adjustment and management, their treatment is … anything but 'routine and conservative.'" *Shelley C.*, 61 F.4th at 363; *see also Wilson v. Colvin*, No. 8:15-cv-04185-MGL-JDA, 2016 WL 6471904, at *15 (D.S.C. Oct. 19, 2016) (rejecting ALJ's characterization of claimant's treatment as "conservative" where claimant treated with a psychiatrist, took psychotropic medications, and required repeated medication changes because of "ineffectiveness"), *R. & R. adopted*, 2016 WL 6433500 (D.S.C. Oct. 31, 2016).

Here, Walker's treatment involved a variety of medications to address her mental health, including the antidepressants trazodone, sertraline, fluoxetine, bupropion, venlafaxine, and doxepin, the anticonvulsant Klonopin, and the antipsychotic quetiapine. R. 353, 368. The record supports that Walker was prescribed many of these medications at least as early as May 2022;

---

in a reply brief if it is asserted to respond to an argument first made in the opposing party's opposition brief. *See Lismont v. Alexander Binzel Corp.*, No. 2:12-CV-592, 2014 WL 12527239, at *2 (E.D. Va. May 23, 2014). Here, Walker styles her argument as being raised in response to a new argument the Commissioner asserts in its opposition brief. The Commissioner's argument, however, merely reiterates the ALJ's findings, findings that Walker could have, and should have, challenged in her opening brief. *See* ECF No. 16 at 3–4; ECF No. 15 at 8. Nevertheless, the Court's consideration of this waived argument would not prejudice the Commissioner. This is because regardless of the outcome of this argument, the Court would still remand the ALJ's judgment based on reversible error in other parts of the ALJ's decision. Thus, the Court exercises its discretion to consider this argument to instruct the ALJ on remand. *See De Simone*, 36 F.4th at 531 (holding "district courts may rely on a variety of circumstances" in exercising their discretion to consider a waived argument).

that she was later only prescribed quetiapine and venlafaxine; that by November 2023 her providers stopped prescribing her quetiapine and venlafaxine "due to inefficacy of previous trial" and prescribed her the antidepressant doxepin at 25 milligrams; and that Walker's dosage of doxepin was later increased to 100 milligrams. R. 353, 367–68, 373. Additionally, Walker appears to have had regular appointments with mental health providers for at least three years. *See* R. 364 (discussing how Walker sees a therapist and a psychiatrist once a month); R. 368 (noting in November 2023 that Walker "has been a patient of provider for more than 2 years. Over that time, [she] ha[s] been experiencing continued depressive symptoms ranging from apathy, sad moods, poor appetite, insomnia, amotivation."); R. 378 (discussing continued treatment in January 2024).

Based on her various prescribed mental health medications, medication adjustment, and consistent visits with mental health professionals, Walker's treatment is anything but conservative. *See, e.g.*, *Edwin M. v. Saul*, No. 4:19-CV-00046, 2021 WL 1565415, at *9 (W.D. Va. Apr. 21, 2021) (rejecting ALJ's "conservative" characterization in part because claimant was prescribed various mental health medications including antidepressants trazodone and sertraline); *Chubb v. Colvin*, No. 3:12-CV-168 JD, 2013 WL 4540726, at *11 (N.D. Ind. Aug. 27, 2013) ("Both Dr. Reinstein and Dr. Haskin prescribed a number of depression medications to Chubb. Dr. Haskin also demonstrated that the treatment was less than conservative by increasing the dosage of medication throughout the treatment."). Accordingly, the ALJ's finding that Walker's mental health treatment was conservative is not supported by substantial evidence, and such a finding cannot discount CNRP Johnson's opinion.

Second, the ALJ erred by failing to reconcile contradictory evidence in the record as part of the consistency analysis. "[M]eaningful review is frustrated," and remand is warranted, "when

an ALJ goes straight from listing evidence to stating a conclusion" without analysis. *Thomas*, 916 F.3d at 311. In particular, the ALJ must analyze significant evidence that contradicts the ALJ's conclusion. *Cleo G. v. Comm'r of Soc. Sec.*, Civil Action No. EA-24-2834, 2025 WL 2771919, at *4 (D. Md. Sept. 29, 2025).

Here, the ALJ cited contradictory evidence regarding Walker's mental abilities and concluded that CNRP Johnson's check-box opinion was inconsistent with the record. On the one hand, the ALJ noted Walker's mini-mental state examination (MMSE), which CNRP Johnson administered. R. 24; R. 365–66. In the MMSE, Walker scored a 2/5 for attention and calculation and 2/3 for recall. R. 365. In total, Walker had a raw score of 23 and a T-score of 27, which CNRP Johnson opined was "evidence of a significant cognitive impairment." R. 366. On the other hand, the ALJ noted some of Walker's other exam notes in which Walker presented with "good attention, … fully orientated, cognitive function intact, … normal attention span and concentration, and thought process intact." R. 25. Based in part on these exam notes, the ALJ concluded that CNRP Johnson's check-box opinion was inconsistent with the record. R. 25–26.

The error lies in the ALJ's failure to reconcile this contradictory evidence and explain the basis for the ALJ's conclusion. *Brockman v. Kijakazi*, No. 9:22-cv-00274-DCC-MHC, 2023 WL 1933274, at *6 n.4 (D.S.C. Jan. 26, 2023) ("There is a fundamental difference between recognizing the existence of medical evidence in the record and providing a meaningful discussion of how that evidence influenced the disability determination."), *R. & R. adopted*, 2023 WL 1930157 (D.S.C. Feb. 10, 2023). The ALJ did not adopt or reject the MMSE evidence, discount it, or compare or contrast it with other evidence in the record. Thus, because the ALJ failed to address significant evidence from Walker's MMSE that appears to conflict with the ALJ's consistency analysis, the ALJ erred.

Accordingly, while the ALJ did not err in analyzing the supportability of Johnson's opinion, the ALJ did err in analyzing its consistency.

**III. The ALJ Erred in Evaluating the Opinions of the State Agency Medical Consultants Dr. Roda and Dr. Rutherford, Jr.**

Prior to the ALJ's decision, State Agency Medical Consultants Dr. Roda and Dr. Rutherford, Jr. opined on Walker's functional abilities. At the initial level, Dr. Roda opined that Walker did not have any severe physical impairments. R. 57. On reconsideration, Dr. Rutherford, Jr. opined that there was insufficient evidence to assess Walker's physical and mental abilities. R. 66–69.

Walker argues that the ALJ failed to evaluate the supportability and consistency of these opinions. ECF No. 13 at 20. An ALJ must consider the findings of state agency medical consultants as opinion evidence and thus must evaluate their supportability and consistency. *See* 20 C.F.R. § 416.913a(b)(1). Here, however, the ALJ omitted altogether an evaluation of Dr. Roda's and Dr. Rutherford, Jr.'s opinions. As a result, the ALJ erred.

The ALJ's errors in evaluating Dr. Kurichh's, CNRP Johnson's, Dr. Roda's, and Dr. Rutherford, Jr.'s opinions are not harmless. "Remand is warranted when an ALJ fails to properly consider the supportability and consistency of a medical opinion." *Cody C. v. Bisignano*, Civil Action No. EA-24-3739, 2025 WL 3077642, at *4 (D. Md. Nov. 4, 2025); *Lauren*, 2025 WL 754522, at *5 (collecting cases). This is because the ALJ's missing analysis "prevents, or at least substantially hinders, judicial review" of the ALJ's findings. *Drumgold*, 144 F.4th at 605 n.9 (citation omitted). Additionally, had the ALJ properly considered the opinions, he "may have come to a different determination of the weight [they] should have been given. This revised weight could have, in turn, altered [Walker's] RFC." *Charles H. v. Kijakazi*, Civil Action No.

BAH-22-3331, 2023 WL 5984150, at *4 (D. Md. Sept. 14, 2023). Accordingly, the Court remands this case for further review.

On remand, the ALJ should properly explain how he considered the supportability of Dr. Kurichh's opinion, the consistency of CNRP Johnson's opinion, and the supportability and consistency of Dr. Roda's and Dr. Rutherford, Jr.'s opinions pursuant to 20 C.F.R. § 416.920c. As to the arguments Walker raised that the Court did not address, the ALJ is welcome to consider these arguments on remand. The Court expresses no opinion as to whether the ALJ's ultimate conclusion regarding Walker's entitlement to benefits is correct.

**CONCLUSION**

Pursuant to sentence four of 42 U.S.C. § 405(g), the Social Security Administration's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion.

A separate order follows.

Date: August 26, 2026

/s/
Chelsea J. Crawford
United States Magistrate Judge